Hillsborough
No. 85-489

## DEBORAH A. CUNNINGHAM, ADM'X OF THE ESTATE OF KENNETH YOUNG

### v.

## CITY OF MANCHESTER FIRE DEPARTMENT

April 3, 1987

*Craig and Wenners P.A.*, of Manchester (*Vincent A. Wenners, Jr.*, on the brief and orally), for the plaintiff.

*Devine, Millimet, Stahl and Branch P.A.*, of Manchester (*Eileen Fox* on the brief and orally), for the defendant.

THAYER, J.   This appeal presents three issues pertaining to the operation and application of RSA 281:2, V-a, a provision of the Workers' Compensation Law which establishes a prima facie presumption that heart disease in firefighters is occupationally-related: (1) the proper evidentiary standard which the defendant must meet in order to rebut the presumption; (2) the specific type of expert testimony that constitutes acceptable rebuttal evidence; and (3) whether sufficient evidence exists in the record to rebut the presumption.

The plaintiff appeals the dismissal by the Superior Court (*C. Flynn*, J.) of her appeal from the labor commissioner's denial of worker's compensation benefits for the plaintiff's decedent's alleged work-related heart attack and coronary arteriosclerosis. We affirm in part, reverse in part, and remand.

The relevant facts of this matter may be stated briefly. The plaintiff's decedent, Kenneth Young, was employed as a firefighter with the City of Manchester Fire Department from November 21, 1950, until he retired with the rank of captain on October 5, 1979. The parties stipulated at trial that Young retired because chest pains rendered him unable to perform his official duties. While fighting a fire on June 21, 1979, Young allegedly suffered a non-transmural subendocardial myocardial infarction, or heart attack. In November 1979, Young consulted a cardiologist complaining of chest pains, and a catheterization was performed. The diagnosis was that Young

was suffering from arteriosclerotic cardiovascular disease, or hardening of the arteries, with angina pectoris.

Young then filed a claim for workers' compensation benefits for the alleged heart attack of June 21, 1979. By a decision dated September 24, 1980, the labor commissioner denied Young's claim. In January 1983, Young was admitted to the Catholic Medical Center because of increasing chest discomfort. On January 14, 1983, Young suffered a fatal, acute inferior wall myocardial infarction.

The administratrix of Young's estate, Deborah Cunningham, was substituted as the plaintiff. In September 1985, a superior court hearing was held on Young's appeal of the labor commissioner's decision. The plaintiff made three basic arguments below regarding the decedent's heart condition: (1) that Young had suffered an occupationally-related heart attack on June 21, 1979, that caused the onset of spasms of angina pectoris; (2) that Young's coronary arteriosclerosis was caused by his employment as a firefighter; and (3) that these heart problems in turn disabled Young. Additionally, during the hearing the plaintiff attempted to present evidence to support a death claim.

The bulk of the trial was occupied by the testimony of Dr. Elliot Sagall. Dr. Sagall examined, *inter alia,* the medical records from Young's November 1979 hospitalization. Referring to those records, Dr. Sagall concluded that Young did not suffer a heart attack in June 1979. Dr. Sagall also testified on the subject of Young's coronary arteriosclerosis. He stated that, in his opinion, the decedent's arteriosclerosis was not related to his employment as a firefighter. In arriving at his conclusion, Dr. Sagall did not rely on the decedent's medical records; instead he referred to the uncertainty in the medical community on the causation of heart disease, and to studies indicating the absence of a correlation between firefighting and heart disease. Thus, in Dr. Sagall's opinion, there was no medical evidence that the decedent's occupation played a role in the development of his arteriosclerosis. Lastly, the doctor testified that Young's bouts of angina pectoris were simply symptoms of his arteriosclerosis, and not caused by a separate condition.

The trial court made the following findings: the decedent did not suffer a myocardial infarction on June 21, 1979; the angina attacks were caused by Young's coronary arteriosclerotic disease; and the defendant had demonstrated by a preponderance of the evidence that there was no causal relationship between the decedent's arteriosclerosis and his employment.

■■ In this appeal, the plaintiff presents three arguments for our consideration. First, she argues that RSA 281:2, V-a requires

the application of a standard of proof by clear and convincing evidence in order to rebut the provision's presumption. Consequently, the trial court erred in applying the preponderance of the evidence standard. Second, and alternatively, she contends that even if one assumes proof by a preponderance of the evidence is the proper standard, RSA 281:2, V-a still requires payment of workers' compensation benefits where an expert is unable to diagnose the etiology of the firefighter's heart disease. Finally, she argues that the defendant did not rebut the presumption by citing evidence that Young's heart disease was not job-related.

The relevant language of RSA 281:2, V-a reads as follows:

> "[T]here shall exist a prima facie presumption that heart or lung disease in a firefighter . . . is occupationally related . . . "

In disposing of this appeal, it is important to remember where the presumption of RSA 281:2, V-a operates and where it does not. The plaintiff in a workers' compensation suit must prove legal and medical causation of injuries. *New Hampshire Supply Co. v. Steinberg*, 121 N.H. 506, 508–09, 433 A.2d 1247, 1249 (1981). The statutory presumption relieves a firefighter of proving legal causation; *i.e.*, that the heart disease or injury was causally related to his employment. Such a plaintiff must, however, still satisfy the second requirement of demonstrating medical causation, *i.e.*, that the plaintiff did suffer from disabling heart maladies, *City of Rochester v. Smith*, 119 N.H. 495, 497, 403 A.2d 421, 422 (1979), as the presumption does not operate here. In this case, the second prong has clearly been satisfied with respect to the decedent's arteriosclerosis and angina pectoris, and the defendant does not contest that Young was disabled by heart disease and the symptomatic angina. What is in issue medically, as it pertains to this second requirement, is whether Young actually suffered a heart attack in June 1979.

Before addressing the merits of the appeal we must first establish the meaning and effect of RSA 281:2, V-a's presumption. We begin our discussion by noting that there are two theories of presumptions. The first type was articulated by James Bradley Thayer in his Preliminary Treatise on Evidence (1898). The Thayer theory holds that "the only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. If that evidence is produced by the adversary, the presumption is spent and disappears." McCORMICK ON EVIDENCE § 344, at 974 (E. Cleary 3d ed. 1984); *see Jodoin v. Baroody*, 95 N.H. 154, 156–57, 59 A.2d 343, 345 (1948). Thus, the Thayer theory does not require an affirmative demonstration of the probable non-existence of the presumed fact, but merely

that the rebuttal evidence be "sufficient to support a finding contrary to the presumed fact." McCORMICK, *supra* § 344, at 975. Commentators have criticized the Thayer theory on the ground that it grants presumptions too weak an effect, especially when substantial policy considerations underlie a presumption. *Id.*

The second theory of presumptions was developed by Professor Edmund Morgan. The Morgan theory holds that the strong social policy reasons underlying some presumptions may persist despite the introduction of some evidence tending to rebut the existence of the presumed fact. In such situations, the presumption should act to shift the burden of persuasion, as well as the burden of producing evidence. The opponent of the presumption must then demonstrate the non-existence of the presumed fact by at least a preponderance of the evidence, if not by a greater standard. McCORMICK, *supra* § 344, at 980. A Morgan theory presumption thus operates with a weight commensurate with the policy considerations that the presumption embodies. In general, jurisdictions will adopt the Morgan theory of the effect of a particular presumption when the legislature or judiciary wishes to implement a significant policy objective. N.H. R. Ev. 301, comment at 21 (1986). In deciding which of the two presumption theories should govern the meaning of the presumption contained in RSA 281:2, V-a, we must consider whether the statute reflects a significant policy objective. To ascertain the legislative objectives, we therefore turn to the legislative history of RSA 281:2, V-a, which was enacted in 1973.

According to documents provided to the court by the plaintiff in an attachment to her brief, the House Committee on Labor, Human Resources and Rehabilitation heard testimony on the stresses of firefighting, the exposure to noxious fumes, and the disproportionately high incidence of heart disease in firefighters. The committee was also presented with testimony asserting that no evidence of an occupational cause of heart disease exists. Despite this conflict in the medical community, the bill the committee sent to the house, and which the house passed and sent to the senate, created a conclusive presumption that heart disease in firefighters is occupationally-related. The senate made various changes and additions, including modifying the presumptive force language from conclusive to prima facie, and the bill was enacted with those amendments. Notwithstanding the amendments, the enacted bill established a presumption that heart disease in firefighters is work-related.

The legislature was apparently unpersuaded by medical opinion questioning the cause and effect relationship of firefighting and heart disease. Instead, the legislature drew its own conclusion that a nexus exists between the occupation and the disease. The apparent

purpose of RSA 281:2, V-a is to implement a social policy of providing compensation to firefighters in those circumstances where the medical evidence fails to establish the etiology of the plaintiff's heart disease. In order to give full effect to the legislative intent, the presumption must be endowed with a force consistent with the legislative concerns underlying the presumption.

■ Application of the Thayer theory of presumptions simply would not be consistent with the policy objective of RSA 281:2, V-a. Even a slender amount of rebuttal evidence can too handily defeat a Thayer presumption; and RSA 281:2, V-a would be bereft of the strength the legislature wished to give it. For the same reason, the rebuttal evidence adduced must be of a type that addresses factors unrelated to the plaintiff's occupation. Although medical literature acknowledges that the exact cause of heart diseases is unknown, various "risk factors" are thought to influence their development. These risk factors include: smoking, a family history of heart disease, lipid abnormalities, metabolic disorders (such as diabetes or hyperuricemia), diet, obesity, hypertension, and emotional stress and strain. I. Weinreb, A. Lee, D. Goldberg, W. Breall, *Heart Disease*, in 2 ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 30.41(1), at 30-23 (R. Gray and L. Gordy 3d ed. 1985). Only evidence of risk factors such as those enumerated above, provided those factors are non-work-related, is acceptable to rebut the presumption of RSA 281:2, V-a. Basic logic dictates that a presumption stating that a disease is job-related can only be rebutted by evidence that the disease was not job-related. Any other interpretation would subvert the manifest intent of the provision. We thus hold that the presumption in RSA 281:2, V-a must be interpreted in accordance with the Morgan theory of presumptions. The defendant bears the burden of persuasion, and can rebut the presumption only by producing evidence that one or more non-occupationally-related factors were more probably the cause of the plaintiff's heart disease than his firefighter occupation. Needless to say, the sufficiency of any such rebuttal evidence is for the trier of fact to determine.

Our interpretation of RSA 281:2, V-a is in accord with the treatment of similar presumptions in other jurisdictions. The language of these provisions in other States differs in form from RSA 281:2, V-a, but not in substance. All create a presumption that heart disease and injuries in firefighters are occupationally-related. MD. ANN. CODE art. 101, § 64A(a)(1) (1985 Repl. vol.); WIS. STAT. § 891.45 (1983–84); MICH. COMP. LAWS ANN. § 418.405(2) (1985); VA. CODE § 65.1-47.1 (Supp. 1986); MINN. STAT. § 176.011, subd. 15 (1984); LA.

REV. STAT. ANN. § 33.2581 (West Supp. 1986); OR. REV. STAT. § 656.802(2) (1985).

In the two jurisdictions where the issue of Thayer versus Morgan theories has been explicitly addressed, the Morgan theory has prevailed because of the same public policy concerns we have already expressed. *Montgomery Co. Fire Bd. v. Fisher*, 298 Md. 245, 257–58, 468 A.2d 625, 631 (1983); *Sperbeck v. ILHR Department*, 46 Wis. 2d 282, 287–88, 174 N.W.2d 546, 548–49 (1970). In addition, at least one other jurisdiction has implicitly construed its firefighter presumption as incorporating a Morgan theory. *Vincent v. City of New Orleans*, 326 So. 2d 401, 403, 405 (La. Ct. App. 1975). Only one State appears to have read its statute as incorporating the Thayer theory. *Page v. City of Richmond*, 218 Va. 844, 847–48, 241 S.E.2d 775, 777 (1978).

■ In addition, all jurisdictions possessing provisions similar to RSA 281:2, V-a have required production of non-job-related, causative factors to explain the plaintiff's heart disease. *Cook v. City of Waynesboro*, 225 Va. 23, 28–30, 300 S.E.2d 746, 748 (1983); *Wright v. SAIF*, 289 Or. 323, 332, 613 P.2d 755, 760 (1980); *Worden v. County of Houston*, 356 N.W.2d 693, 695–96 (Minn. 1984); *Montgomery Co. Fire Bd., supra* at 256, 468 A.2d at 630; *Vincent, supra* at 403, 405; *see Sperbeck, supra* at 289, 174 N.W.2d at 549. Once again, the rationale for this evidentiary requirement is to give full effect to the legislative intent. *Linnell v. City of St. Louis Park*, 305 N.W.2d 599, 601 (Minn. 1981); *Schave v. State Police*, 58 Mich. App. 178, 184–85, 227 N.W.2d 278, 282 (1975). The law from other jurisdictions thus supports our conclusion that acceptance in rebuttal of anything less than evidence of non-job-related factors would only vitiate the presumptive effect of RSA 281:2, V-a. We emphasize that this standard does not impose upon the defendant the burden of proving the specific cause of the plaintiff's heart disease. Rather, it requires that the defendant provide evidence of non-occupationally-related risk factors from which a reasonable trier of fact could conclude that the plaintiff's heart disease was, more probably than not, caused by one or more of those non-occupational factors.

■ We turn next to the question of whether the defendant's evidence must be sufficient to meet a clear and convincing standard, or, rather, only a preponderance of the evidence standard. The plaintiff urges us to construe RSA 281:2, V-a as creating a presumption that is rebuttable only by clear and convincing evidence. We reject this invitation. The general rule on interpretation of Morgan theory presumptions is that, in the absence of language to the con-

trary, the presumption is rebuttable by a preponderance of the evidence: "The minority [Morgan] approach gives maximum effect to most presumptions; a shift in the burden of persuasion results in placing upon the opponent the burden of convincing the trier that the nonexistence of the presumed fact is more probable than its existence." G. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE 54 (1978); *see also Montgomery Co. Fire Bd.*, 298 Md. at 257, 468 A.2d at 631. We hold that the presumption created by RSA 281:2, V-a is rebuttable by a preponderance of the evidence.

As we have already stated, the plaintiff makes several contentions on appeal pertaining to the decedent's heart problems: (1) that the plaintiff's decedent suffered a work-related heart attack in 1979 that caused angina attacks; (2) that the decedent's arteriosclerosis was work-related; and (3) that the decedent's work-related arteriosclerosis caused his fatal heart attack in 1983. The first two claims involve requests for benefits to compensate for the disabling heart problems. The third claim naturally also involves the statutory compensation for the plaintiff's decedent's death. We begin by noting that the plaintiff's third claim was not properly raised below. The plaintiff never filed any pleadings articulating an assertion that the decedent's fatal heart attack was related to his employment. The trial court properly dismissed the plaintiff's requests for findings of fact and rulings of law regarding death claims.

■■ The plaintiff's other two claims were raised below, and we proceed to address them. Our standard of review with respect to the weight of the evidence is whether a reasonable person could find as did the lower court. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981). There was ample evidence in the record to support the trial court's determination that the plaintiff's decedent did not even suffer a heart attack in June of 1979. The defendant introduced into evidence several items from the plaintiff's 1979 and 1983 hospital admissions. These records included descriptions of decedent's symptoms, chest X-rays, electrocardiograms, and diagnoses of the attending physicians. On the basis of these records, the defendant's expert concluded that the decedent did not suffer a heart attack until the fatal, 1983 occurrence. In addition, the defendant introduced expert testimony indicating that angina pectoris is related to coronary arteriosclerosis, not heart attacks. The trial court's findings on the heart attack and angina issues were thus supported by the evidence.

The last issue we dispose of is also the most difficult: was the plaintiff's decedent's coronary artery disease causally related to his employment? The trial court found that it was not. The defendant's

expert, Dr. Sagall, testified that the plaintiff's decedent suffered from an "underlying" disease process of arteriosclerosis. Dr. Sagall then testified as follows:

"There is no medical indication in any way that his employment contributed to initiate or hastened the development of this disease. The disease is one of unknown cause or causes, and various studies which have appeared in the medical literature concerning the incidence and severity of this type of disease in firefighters as compared to other members of the general population have not indicated any increased number of, or percentage of incidents of this type of heart disease in firefighters."

The infirmity of Dr. Sagall's citation of medical studies is that such testimony only attacks the rationale of RSA 281:2, V-a. As we have already stated, the legislature was aware that the exact causation of cardiac diseases is unknown, and that the medical community disagrees as to the role of one's occupation in the development of these diseases. The legislature decided, nevertheless, that a sufficiently positive relationship exists between heart disease and the environmental and stressful aspects of firefighting to warrant the creation of RSA 281:2, V-a's presumption. Dr. Sagall's testimony went no further than to question the wisdom of the legislature, without producing evidence of non-work-related causes of Young's arteriosclerosis. This type of testimony is insufficient to rebut the presumption. *See Sperbeck*, 46 Wis. 2d at 289, 174 N.W.2d at 549; *Linnell*, 305 N.W.2d at 601; *Wright*, 289 Or. at 332, 613 P.2d at 760.

Dr. Sagall then went on to testify as follows:

"A So that there would be, in my opinion, no medical evidence that his occupation as a firefighter played any role, whatsoever, in his basic underlying disease.

Q So what you're saying, Doctor, and I want to make sure I understand you correctly, is that Mr. Young has an underlying disease process going on, which, in your opinion, I take it, in reasonable medical probability, was neither caused or accelerated or hastened by his employment as a fireman, is that correct?

A That's correct."

At this point, Dr. Sagall's testimony entered an area on the threshold of valid rebuttal evidence. He refrained from referring to general academic studies, and addressed his remark to the heart condition of the plaintiff's decedent. The weakness of Dr. Sagall's testimony was that he still did not cite evidence of non-work-related

risk factors that may have precipitated Young's heart disease. All one can infer from this latter segment of Dr. Sagall's testimony is that his doubts concerning the occupational causes of heart disease, and not a particularized analysis of Young's pathology, formed the foundation for his conclusion.

The plaintiff's expert, Dr. Edward Palank, also testified in a deposition on the issue of Young's arteriosclerosis. Dr. Palank's testimony was equivocal. On two occasions, Dr. Palank was pressed by the defendant's attorney to agree with the proposition that Young's arteriosclerosis was not related to his employment. On both occasions, Dr. Palank asserted that Young's occupation possibly played a role in the development of his heart disease.

At a later point in the deposition the questioning focused on the relationship of the decedent's arteriosclerosis to his angina attacks which began in June 1979 while the decedent was engaged in firefighting activity. In the course of that discussion, the following colloquy occurred:

"Q [by defendant's attorney:]
The condition itself, the underlying coronary arteriosclerotic heart condition that he had, this underlying condition is not caused by his work, is it?

A [by Dr. Palank:]
More likely than not. It is unlikely that his work caused coronary artery disease. The arteriosclerotic process did that.

Q It's unlikely that the work caused that. What you're saying is the work in your opinion caused him to have angina, correct?

A That is correct.

Q And angina is a symptom, is it not, of a problem developing where the heart doesn't have adequate blood supply?

A That's correct."

The above dialogue demonstrates that the angina was merely a symptom of the underlying coronary artery disease. The issue of the cause of the arteriosclerosis, however, still remains. The earlier ambiguity of Dr. Palank's testimony on the issue of the role of Young's occupation in the development of his arteriosclerosis is hardly clarified by Dr. Palank's statement that it was "unlikely that [Young's] work caused coronary artery disease. The arteriosclerotic process did that." Dr. Palank's testimony would seem to indicate that the disease "process" accounted for the arteriosclerotic condi-

tion. The term "process," however, only describes the progression, and not the causation of the disease. Dr. Palank does not explain how that disease process was non-work-related. Thus, Dr. Palank's vague reference to an "arteriosclerotic process" falls short of the particularized causal analysis of the plaintiff's coronary disease that we deem necessary to rebut the presumption of RSA 281:2, V-a.

The defendant's brief also cites Dr. Palank's testimony that Mr. Young suffered from hypertension, or high blood pressure, for eight years before his arteriosclerotic condition was diagnosed in 1979. Hypertension is a recognized risk factor in the development of arteriosclerosis. 2 ATTORNEYS' TEXTBOOK *supra*. Once again, however, the analysis must be directed to the issue of the non-work-related nature of a plaintiff's hypertensive condition. Dr. Palank stated that he did not know the reason for Young's high blood pressure. This admission of an inability to diagnose the hypertension's etiology placed Young's hypertension squarely outside the sphere of non-work-related causal factors required to rebut the presumption of RSA 281:2, V-a.

■ We have carefully examined the experts' testimony in this case, bearing in mind the admittedly complex nature of coronary artery disease. Such detailed analysis is not only proper, but necessary, in order to ensure that legal dispositions of legal and medical issues have proper foundations in jurisprudence and medicine. Our painstaking review of both Dr. Sagall's and Dr. Palank's testimony leads us to the conclusion that, because neither expert produced evidence of non-occupational causes of the plaintiff's decedent's heart disease, no reasonable trier of fact could find, under the standard we adopt today, that the plaintiff's decedent's arteriosclerosis was, more probably than not, non-occupationally-related. We thus reverse the trial court's determination that the plaintiff's decedent's arteriosclerosis was not occupationally-related, and remand to the labor commissioner for a determination of the amount of disability and medical benefits for the decedent's arteriosclerosis that are due the estate.

*Affirmed in part; reversed in part; remanded.*

All concurred.