## NOTICE: SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE _____ FEB 0 9 2017

for CHIEF JUSTICE

This opinion was filed for record

at 8:10 am on Feb 9, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DELMIS SPIVEY, | ) |
| | ) |
| Petitioner, | ) No. 91680-2 (consolidated with |
| v. | ) No. 92197-1) |
| | ) |
| CITY OF BELLEVUE and DEPARTMENT | ) |
| OF LABOR AND INDUSTRIES, | ) En Banc |
| | ) |
| Respondents. | ) |
| | ) Filed    FEB 0 9 2017 |
| | ) |
| WILFRED A. LARSON, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BELLEVUE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF LABOR AND | ) |
| INDUSTRIES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

OWENS, J. — These consolidated cases involve two city of Bellevue (City) firefighters who were diagnosed with malignant melanoma and filed claims for workers' compensation benefits. In both cases, the Board of Industrial Insurance Appeals (Board) denied the firefighters' claims. Both firefighters then appealed the Board's decision to King County Superior Court.

Under the Industrial Insurance Act (IIA), Title 51 RCW, a worker injured in the course of employment who suffers from an "occupational disease" is entitled to workers' compensation benefits. While generally the burden of proof falls to the worker, there is a statutory presumption that malignant melanoma in firefighters is occupational. RCW 51.32.185(1) (the "firefighter presumption").

The parties disagree about various aspects of how—and whether—the presumption in RCW 51.32.185 should operate when a board decision is appealed to superior court. We note that RCW 51.32.185 reflects a strong social policy in favor of the worker and conclude that (1) whether the City rebutted the firefighter presumption is a factual determination that was properly given to the jury in *Larson*, but improperly decided as a matter of law in *Spivey*, (2) RCW 51.32.185 shifts both the burden of production and burden of persuasion to the employer, (3) in *Larson*, jury instruction 9 was proper, and (4) Larson is entitled to attorney

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

fees at the Board level. We thus affirm the Court of Appeals' decision in *Larson*
and reverse the trial court's decision in *Spivey*.

## FACTS

### A.    *Larson*

Wilfred Larson was diagnosed with malignant melanoma (melanoma) in his
lower back in 2009. He had worked as a firefighter and emergency medical
technician for the City since 1979. He filed a claim with the Department of Labor
and Industries (the Department), seeking coverage for his melanoma as an
occupational disease. The Department allowed the claim, applying the presumption
in RCW 51.32.185(1).

### i.    *Larson: Appeal to the Board*

The City appealed to the Board. At a hearing, Larson presented testimony
from a family practice physician/medical legal consultant who opined that
Larson's work as a firefighter was likely a cause of his melanoma. Larson testified
that he had been exposed to smoke, fumes, soot, and toxic substances during his
firefighting career. However, he admitted on cross-examination that he sometimes
used a tanning bed to get a "base coat" to prevent sunburns on summer trips.
Verbatim Report of Proceedings (VRP) (Aug. 8, 2013) at 290. He also

acknowledged that he had sometimes engaged in outdoor activities without wearing a shirt.

The City presented testimony from medical professionals and researchers who indicated that Larson may have developed melanoma even if he had never worked as a firefighter. The dermatologist who diagnosed Larson testified that she suspected "the most contributing factor" to Larson's melanoma was UV (ultraviolet light) exposure. VRP (Aug. 13, 2013) at 730-32. Another dermatologist testified that he believed Larson's melanoma was the result of "predisposing genetic factors and ultraviolet light exposure" and that Larson likely would have contracted melanoma even if he had never worked as a firefighter. VRP (Aug. 12, 2013) at 608-09. Another witness, an epidemiologist, analyzed various studies and noted that it would be inappropriate to conclude that firefighters are at any increased risk of melanoma.

The Board reversed the benefits award, finding that Larson's melanoma did not arise from distinctive conditions of his employment as a firefighter.

ii.     *Larson: Appeal to Superior Court*

Larson appealed the Board's decision to the superior court. The court denied the City's motion for summary judgment, and the case proceeded to a jury trial on the hearing record. At the end of testimony, the City orally moved the

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court to rule as a matter of law that (1) the City had established by a preponderance of the evidence that Larson's melanoma came from factors unrelated to his work as a firefighter and (2) the City had thus rebutted the firefighter presumption. According to the City, this would leave one issue only for the jury to decide: Did Larson prove (now without the benefit of the firefighter presumption) that his melanoma was an occupational disease? The court denied the City's motion and allowed the jury to decide whether the City had rebutted the firefighter presumption.

The court submitted 14 instructions to the jury. Jury instruction 9 explained the burdens of proof applicable at the board level and at the trial court level. It tracked applicable Washington Pattern Jury Instructions (WPI), but added a third paragraph addressing the City's burden of proof at the prior board proceeding. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.03 (6th ed. 2012) (WPI). The court also gave the jury a special verdict form that read as follows:

> **QUESTION 1:** Was the Board of Industrial Insurance Appeals correct in deciding that the employer rebutted, by a preponderance of the evidence, the presumption that Plaintiff's malignant melanoma was an occupational disease?
>
> **ANSWER:** ___ (Write "yes" or "no")

*Spivey v. City of Bellevue/Larson v. City of Bellevue*
No. 91680-2

> *(INSTRUCTION: If you answered "no" to Question 1, do not answer any further questions. If you answered "yes" to Question 1, answer Question 2.)*

> **QUESTION 2:** Was the Board of Industrial Insurance Appeals correct in deciding that the Plaintiff did not prove by a preponderance of the evidence that his malignant melanoma was an occupational disease?

> **ANSWER:** \_\_\_\_ (Write "yes" or "no").

Clerk's Papers (CP) (Larson) at 1775-76. The jury answered "no" to the first question, indicating that the City had not rebutted the presumption that Larson's melanoma was an occupational disease. The trial court entered a judgment in Larson's favor and also awarded Larson attorney fees and costs incurred before the Board and the court. The City appealed, and the Court of Appeals affirmed the trial court. *Larson v. City of Bellevue*, 188 Wn. App. 857, 885, 355 P.3d 331 (2015), *review granted*, 184 Wn.2d 1033, 379 P.3d 948 (2016).

B. *Spivey*

Delmis Spivey is another Bellevue firefighter who was diagnosed with melanoma. Like Larson, Spivey filed a claim with the Department, seeking coverage for his melanoma as an occupational disease. However, the Department ultimately denied the claim in 2013.

i.      *Spivey: Appeal to the Board*

Spivey appealed to the Board.  At the board hearing, Spivey noted that none of the City's experts could definitively exclude firefighting as a cause of melanoma and presented similar testimony to that in *Larson*.[1]  However, Spivey admitted to having a number of risk factors for melanoma, including a predominately English heritage, freckles, and a history of sunburns as a child.  He also admitted that he used a tanning bed "once or twice" in his early 20's.  Admin. Record (AR) at 370 (trial transcript at 163, Apr. 12, 2014).

The City presented evidence from the dermatologist who had diagnosed Spivey's melanoma.  She was not aware of any evidence that would suggest a causal link between soot, ash, smoke, or toxic substances and his condition.  She also testified that Spivey had certain risk factors for melanoma, such as freckling on his upper back (where the melanoma was located).  Another doctor performed a medical exam of Spivey and testified that his melanoma was likely the result of UV exposure and not work related.  The City also presented testimony from some of the same experts who were used in *Larson*.

The Board determined that the City rebutted the firefighter presumption by proving by a preponderance of the evidence that Spivey's melanoma was caused

---

[1] Spivey was represented by the same attorney as Larson.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

by "sun exposure, not his work activities and exposures." AR at 3. The Board

affirmed the Department's order rejecting Spivey's claim.

### ii.  *Spivey: Appeal to Superior Court*

Spivey appealed the Board's decision to superior court. At the conclusion of

its briefing, the City moved for a determination that whether the City met its

burden to rebut the firefighter presumption "is a question of law to be decided by

the judge." CP (Spivey) at 18, 175.

Unlike in *Larson*, the judge granted the City's motion (after making a few

changes to its wording)[2] and went on to decide that the City had met its burden to

rebut the presumption of "occupational disease" within the meaning of RCW

51.32.185. *Id.* at 175. Thus, the only remaining issue for trial is whether Spivey

proved, without the benefit of the firefighter presumption, that his melanoma is

"occupational." In light of the court's order, the City filed motions in limine to

preclude comments, arguments, or references to RCW 51.32.185.

---

[2] The original language in the City's proposed order read, "[W]hether the City met its burden
of production to rebut the presumption of occupational disease within the meaning of RCW
51.32.185 is a question of law to be decided by the judge." CP (Spivey) at 175. The
language in the order revised and signed by the judge stated that "the City has met its burden
to rebut the presumption of occupational disease within the meaning of RCW 51.32.185."
*Id.* The record is inconclusive as to why the judge made these changes before signing.

      iii.    *Petition for Review (Larson)/Motion for Discretionary Review (Spivey)*

In *Spivey*, the firefighter moved for discretionary review of the superior court's decision that as a matter of law, the City had rebutted the presumption that melanoma in firefighters is an occupational disease. In *Larson*, the City petitioned for review of the Court of Appeals' decision to allow the rebuttal question go to the jury. It also challenged various aspects of jury instruction 9 and the trial court's award of attorney fees to Larson for litigating his claim at the board level.

We granted the petition and the motion and consolidated the two cases. Order Granting Review and Consolidation, *Spivey v. City of Bellevue*, No. 91680-2, *consolidated with* No. 92197-1 (Wash. Feb. 10, 2016). The matters are consolidated under Supreme Court cause no. 91680-2. 184 Wn.2d 1033. The remainder of Spivey's trial is pending.

## ISSUES

1.     Is the question of whether the City rebutted the firefighter presumption one of law or fact?

2.     In *Larson*, did jury instruction 9 properly inform the jury of the applicable burden of proof?

3.     Was Larson entitled to attorney fees and costs for expenses he incurred at the board level, where he did not prevail?

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

Here, we are asked to interpret sections of the IIA. Statutory interpretation is a question of law that this court reviews de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). The IIA is remedial in nature, and thus we must construe it "liberally . . . in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

A. *RCW 51.32.185: Occupational Disease Presumption for Firefighters*

In general, the burden of proving an occupational disease under the IIA falls to the worker. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 36, 357 P.3d 625 (2015); *Olympia Brewing Co. v. Dep't of Labor & Indus.*, 34 Wn.2d 498, 505, 208 P.2d 1181 (1949), *overruled in part by Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958). An "occupational disease" is defined as a disease or infection that arises "naturally and proximately" out of employment. RCW 51.08.140. Thus, to receive benefits, a worker must show that his or her injury arose from employment.

However, there is a statutory prima facie presumption that melanoma in firefighters is an occupational disease for workers' compensation purposes. RCW

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

51.32.185(1)(c), (3). This presumption can be rebutted by a preponderance of the

evidence, which may include lifestyle, hereditary factors, and exposure from other

employment or nonemployment activities. RCW 51.32.185(1). A firefighter who

does not qualify for the occupational disease presumption may still receive

benefits, but he or she retains the burden of proof. *Gorre*, 184 Wn.2d at 33.

Another IIA provision, RCW 51.52.115, addresses the applicable burden of

proof when a board decision is appealed to superior court. The Board's decision is

"prima facie correct[,] and the burden of proof shall be upon the party attacking the

same." *Id.* The superior court may reach a different result only after finding by a

preponderance of the evidence that the Board's findings and decision are

erroneous. *Gorre*, 184 Wn.2d at 36.

Here, we must decide how RCW 51.32.185 operates at the trial court level.

This is an issue of first impression: Washington cases involving the firefighter

presumption have not directly addressed how it operates in superior court.[3] We hold

that whether the City rebutted the firefighter presumption by a "preponderance of the

---

[3] We recently addressed another aspect of RCW 51.32.185 in *Gorre*, 184 Wn.2d 30. There, we held that the presumption did not apply to valley fever, in part because valley fever is not specifically enumerated in the statute. *Id.* at 34. But here, "malignant melanoma" *is* specifically enumerated in RCW 51.32.185(3). The Court of Appeals briefly touched on other aspects of the presumption in *City of Bellevue v. Raum*, 171 Wn. App. 124, 147, 286 P.3d 695 (2012), holding that RCW 51.32.185 does not establish an entirely separate cause of action and briefly noting that "[i]f the City rebuts the presumption, [the firefighter] must come forward with competent evidence supporting his occupational disease claim."

11

evidence" is a question of fact that may be submitted to the jury. We also apply the

Morgan theory of presumptions to RCW 51.32.185 and hold that the presumption

shifts both the burden of production and persuasion to the employer. Edmund M.

Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof,* 47 HARV. L.

REV. 59 (1933). Relatedly, the jury instruction in *Larson* was proper and tracked the

applicable statutes, and the presumptions in RCW 51.32.185 and RCW 51.52.115 do

not conflict. Finally, Larson was entitled to attorney fees for litigating the appeal at

the board level. Thus, as explained further below, the outcome in *Larson* was proper,

but the judge in *Spivey* committed reversible error.

1. *Whether the City Rebutted the Firefighter Presumption Is a Factual Determination That was Properly Given to the Jury in* Larson

The City first argues that the question whether an employer rebutted the

presumption in RCW 51.32.185 should be left to the judge to decide as a matter of

law in every instance. We disagree. As outlined below, the question whether the

employer has rebutted the presumption is a factual issue that may be properly

submitted to the jury, as it was in *Larson.*

RCW 51.32.185(1) states that the firefighter presumption may be rebutted

"by a preponderance of the evidence." While the statute does not define

"preponderance of the evidence," WPI 155.03 does, stating that the jury "must be

persuaded . . . that the proposition on which that party has the burden of proof is

more probably true than not true." Also, *Black's Law Dictionary* defines

"preponderance of the evidence" as "the burden of proof in most civil trials, in

which the jury is instructed to find for the party that, on the whole, has the stronger

evidence, however slight the edge may be." BLACK'S LAW DICTIONARY 1373 (10th

ed. 2014). These definitions make it clear: the question of whether the

presumption is overcome is one of fact that requires weighing all the evidence.

The City relies on another provision, RCW 51.52.115, to support its claim

that the rebuttal issue should instead, in all cases, be decided as a matter of law and

removed from the jury's consideration. RCW 51.52.115 lays out the deferential

standard that must be afforded the Board on appeal to superior court, stating that

"the findings and decision of the board shall be prima facie correct and the burden

of proof shall be upon the party attacking the same." However, the fact that a

board decision is presumed correct does not magically turn it into a question of law

that must be removed from the jury. In *Luna de la Puente v. Seattle Times,* 186

Wash. 618, 626-27, 59 P.2d 753 (1936), we held that a court may allow a jury to

decide whether a presumption has been rebutted. The court in *Larson* did just that.

Thus, in *Larson,* the trial court did not apply the wrong standard of review

when it allowed the jury to decide whether the city successfully rebutted the

presumption. However, in *Spivey,* the trial court judge committed error when he

13

*Spivey v. City of Bellevue/Larson v. City of Bellevue*
No. 91680-2

granted the City's motion and decided as a matter of law that the firefighter presumption had been rebutted. Because neither party has briefed the issue, we decline to address whether it would *ever* be permissible for a judge to decide the issue as a matter of law.

> 2. *In* Larson, *Jury Instruction 9 Properly Informed the Jury regarding the Applicable Burden of Proof*

In *Larson*, the court gave the jury an instruction, jury instruction 9, which explained the applicable burdens of proof at both the prior board proceeding and at the trial court level. The instruction tracked WPI 155.03 but added a third paragraph addressing the burden of proof at the board level (italicized for ease of reference):

> The findings and decision of the Board of Industrial Insurance Appeals are presumed correct. This presumption is rebuttable, and it is for you to determine whether it is rebutted by the evidence.
>
> The burden of proof is on the firefighter to establish by a preponderance of the evidence that the decision is incorrect.
>
> *At the hearing before the Board of Industrial Insurance Appeals, the burden of proof is on the employer to rebut the presumption that 1) claimant's malignant melanoma arose naturally out of his conditions of employment as a firefighter and, 2) his employment is a proximate cause of his malignant melanoma.*
>
> When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a preponderance of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case bearing

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

on the question, that the proposition on which that party has the burden of proof is more probably true than not true.

CP (Larson) at 1768. The City argues that this instruction was improper for several reasons. It first argues that according to the Thayer theory of presumptions, RCW 51.32.185 merely shifts the burden of production to the employer and that the presumption disappears after production of some contrary evidence. JAMES BRADLEY THAYER, A PRELIMINARY TREATISE ON EVIDENCE AT THE COMMON LAW (1898). Next, the City argues that the presumption in RCW 51.52.115 should take precedence over RCW 51.32.185. Finally, the City argues that even if it was correct to inform the jury regarding the burden of proof at the board level, the instruction was misleading. We disagree with the City's arguments.

B. *RCW 51.32.185 Shifts the Burden of Both Production and Persuasion to the Employer*

*Because the Statute Reflects a Strong Social Policy, We Apply the Morgan Theory to the Presumption in RCW 51.32.185*

First, the City and the Department argue that it was wrong for the jury to be informed about the firefighter presumption because, according to the Thayer theory of presumptions, the presumption disappeared after the City produced contrary evidence. We disagree. RCW 51.32.185 reflects a strong social policy, and thus we must accord it the strength intended by our legislature. The presumption does

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not vanish on the production of contrary evidence; it shifts both the burden of production and persuasion to the employer.

To explain, we must delve a bit into abstraction. We begin by noting that there are two general theories of presumptions: the Thayer, or "bursting bubble," theory and the Morgan theory. The Thayer theory minimizes the importance of the presumption, while the Morgan theory gives the presumption a lasting effect throughout the proceedings. *See generally* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 301.13, 301.14 (6th ed. 2016).

The first theory—and the most widely followed today—was articulated by James Bradley Thayer in the late 19th century. THAYER, *supra*. According to Thayer, the only effect of a presumption is to shift the burden of producing evidence to the party against whom the presumption operates. *Cunningham v. City of Manchester Fire Dep't*, 129 N.H. 232, 235-36, 525 A.2d 714 (1987). If such evidence is produced by that party, "the presumption is spent and disappears." 2 MCCORMICK ON EVIDENCE § 344, at 692 (Kenneth S. Broun ed., 7th ed. 2013). Practically speaking, the theory is available to permit the party relying on it to survive a motion for directed verdict, but it has no other value in trial. *Id.* The presumption is never mentioned to the jury if contrary evidence has been introduced. Thus, under the Thayer theory, the City would merely have to present

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

rebuttal evidence "sufficient to support a finding contrary to the presumed fact" in order to destroy the presumption entirely and the burden of proof would remain with the firefighter at all times. *Id.* at 693.

A second theory of presumptions, sometimes called the Morgan theory, recognizes that special policies behind a presumption may require that a jury be informed of its existence, even if some rebuttal evidence has been produced. *Id.* at 695. Technically speaking, under the Morgan theory, a presumption shifts both the burden of producing evidence *and* the burden of persuasion to the opponent of the presumption. *Cunningham,* 129 N.H. at 236. The presumption does not disappear on the production of contrary evidence. Rather, a "Morgan theory presumption . . . operates with a weight commensurate with the policy considerations that the presumption embodies." *Id.*

We have not adopted a general rule for how presumptions such as this one should operate, and thus in Washington the law of presumptions continues to be defined by statutes and case law. TEGLAND, *supra,* §§ 301.1, 301.13. Depending on the underlying statute and type of case, Washington has applied the Morgan theory, the Thayer theory, or in many instances neither theory to statutory presumptions. *Id.* § 301.13. Due to the unsettled nature of our case law, it is understandable why the parties reach contrary positions as to which theory should

17

*Spivey v. City of Bellevue/Larson v. City of Bellevue*
No. 91680-2

apply. Here, we conclude that the plain language of the statute, the legislative intent behind it, and case law from other jurisdictions supports applying the Morgan theory to RCW 51.32.185. We hold that the statute thus shifts the burden of production and persuasion to the employer.

The plain language of the statute indicates that RCW 51.32.185 does more than merely require the employer to produce some contrary evidence. The statute does not use the words "contrary evidence" or "some evidence." It explicitly states that the presumption may be rebutted with a *preponderance* of the evidence. This term indicates that the burden of proof shifts to the party contesting the benefits award to show, more likely than not, that the firefighter's disease is not occupationally related. Drafters of the WPI seem to agree with this interpretation: the WPI generally treat presumptions that state a quantum of proof as shifting to the opponent the burden of proof as to the presumed fact. TEGLAND, *supra*, § 301.15; 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 24.01–.05 (6th ed. 2012).

The City and the Department nevertheless argue that the words "prima facie" indicate that the presumption vanishes on production of contrary evidence. To clear up any confusion, we turn to the statute's legislative history and to case law from other jurisdictions to further clarify which type of presumption the

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

legislature intended. A broader consideration of the policy behind RCW 51.32.185 shows that the legislature did not intend the presumption to simply vanish on production of some rebuttal evidence.

While we have not addressed how presumptions in statutes such as RCW 51.32.185 should be treated, other jurisdictions have done so and have applied the Morgan theory to analogous "firefighter statutes." For example, the New Hampshire Supreme Court analyzed an analogous statute, which stated, "'[T]here shall exist a prima facie presumption that heart or lung disease in a firefighter . . . is occupationally related.'" *Cunningham*, 129 N.H. at 235 (quoting former N.H. Rev. Stat. Ann. § 281:2 (1988). The court reviewed the statute's legislative history and determined that its apparent purpose was to implement a social policy of providing compensation to firefighters in circumstances where medical evidence fails to establish the definitive cause of the plaintiff's heart disease. *Id.* at 236. It went on to note that applying the Thayer theory would not be consistent with the policy objective of the statute, and thus it applied the statutory presumption "with a force consistent with the legislative concerns underlying the presumption." *Id.* at 237. Maryland, Missouri, North Dakota, and other jurisdictions have followed suit when interpreting similar statutes. *See, e.g. Montgomery County Fire Bd. v.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Fisher*, 298 Md. 245, 255-57, 468 A.2d 625 (1983); *Byous v. Mo. Local Gov't Emps. Ret. Sys. Bd. of Trs.*, 157 S.W.3d 740, 746-47 (Mo. Ct. App. 2005).

As discussed by the Court of Appeals, New Hampshire and other courts have also noted that analogous presumptions serve the purpose of relieving firefighters of the "nearly impossible burden of proving firefighting actually caused their disease." *Wanstrom v. N. D. Workers Comp. Bureau*, 2001 ND 21, 621 N.W.2d 864, 867 (2001). The New Hampshire Supreme Court noted that "[e]ven a slender amount of rebuttal evidence can too handily defeat a Thayer presumption," and such is the situation here. *Cunningham*, 129 N.H. at 237. Under the City's proposed interpretation, the City would merely have to appeal all decisions to the Board in order to defeat most firefighters' claims. Given the difficulty of actually *proving* the specific cause of an individual's melanoma, an employer will almost always be able to produce evidence to rebut a Thayer presumption.

The Washington Legislature appeared to take these considerations into account when it added melanoma to the list of qualifying diseases in RCW 51.32.185. The statute was adopted in 1987 and originally provided only presumptive coverage for respiratory diseases. LAWS OF 1987, ch. 515, § 1. In 2002, the legislature amended the statute to add additional diseases, including

20

"malignant melanoma," to the list.[4] LAWS OF 2002, ch. 337, § 1(e). It added

melanoma despite testimony that there was not enough scientific evidence to

support adding additional diseases to the statute. *See* H.B. REP. ON H.B. 2663, at 3,

57th Leg., Reg. Sess. (Wash. 2002) ("[t]he bill is too broad because it covers

conditions for which no correlation to fire fighting exposure is known"). Thus, the

apparent purpose of adding melanoma to the list of covered diseases was to

compensate firefighters even in circumstances when there may not be strong

medical or scientific evidence establishing a definitive causal relationship between

firefighting and the disease.

We thus apply the Morgan theory to the presumption: once a firefighter

shows that he or she suffers from a qualifying disease, RCW 51.32.185(1) imposes

on the employer the burden of establishing otherwise by a preponderance of the

evidence. To be clear, this is a burden both to *produce* contrary evidence and to

*persuade* the finder of fact otherwise. The jury may be instructed regarding the

presumption in RCW 51.32.185. The plain language of the statute, case law from

---

[4] The legislature included a finding that a review of firefighter epidemiology calculated a "statistically significant risk for melanoma among fire fighters." This finding was later vetoed by the governor. LAWS OF 2002, ch. 337 (veto message explaining that "the assumptions in section 1 of this bill have not been clearly validated by science and medicine").

other jurisdictions, and the statute's broader social purpose indicate that RCW

51.32.185 is "stronger" than a Thayer presumption.

We stress, however, that this standard does not impose on the employer a

burden of proving the specific cause of the firefighter's melanoma. Rather, it

requires that the employer provide evidence from which a reasonable trier of fact

could conclude that the firefighter's disease was, more probably than not, caused

by nonoccupational factors. *See* RCW 51.32.185(1). Finally, we emphasize the

narrowness of this holding: While we apply the Morgan theory here, we decline to

adopt a general rule. Rather, we limit our holding's applicability to this statute.

C. *RCW 51.52.115 Does Not Flip the Burdens That Were Applicable at the Department and Board Level*

The City and the Department next claim that because RCW 51.52.115 sets

forth the burden of proof for all appeals to superior court, it governs over the

provisions in RCW 51.32.185. The City goes on to argue that the trial court

disregarded RCW 51.52.115 when it informed the jury about the employer's

burden of proof at the board level. We disagree. We clarify that RCW 51.52.115

requires the party challenging a board decision to show that the decision was not

supported by sufficient evidence. However, it does not change the burdens that

were applicable at the department and board levels.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RCW 51.52.115 states that the Board's decision is presumed correct on appeal, but we have recently clarified that it does not fundamentally flip any burden of proof or presumption applicable in initial department or board hearings. Rather, the party challenging a board decision simply must show that the Board did not meet the applicable burden or adhere to the applicable presumption. In *Department of Labor & Industries v. Rowley,* we clarified that "this court has held that an appellant can meet the burden imposed under RCW 51.52.115 just by showing that the Department's order is not supported by sufficient evidence—that is, without necessarily presenting any new *affirmative* evidence that the Department's order is incorrect." 185 Wn.2d 186, 207-08, 378 P.3d 139 (2016) (citing *Olympia Brewing Co.*, 34 Wn.2d at 504). In other words, a party appealing a board decision can meet the standard in RCW 51.52.115 by demonstrating that the employer's evidence at the board level did not, in fact, rebut the firefighter presumption by a preponderance of the evidence. Any other rule would make it nearly impossible for a firefighter to successfully appeal an adverse "rebuttal" decision by the Board.

RCW 51.52.115 does not fundamentally flip the burden of proof applicable at department or board proceedings. Rather, it imposes on the party challenging a board decision the burden to show that the Board's decision was incorrect by

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

demonstrating that the Board's "findings and decision are erroneous." *Gorre*, 184 Wn.2d at 36. Accordingly, it was proper for the jury to be informed of the employer's burden at the board level, so that it could determine whether the firefighter had made this demonstration.

D. *Jury Instruction 9 Does Not Conflict with* La Vera

The City next argues that instructing the jury about the burden of proof at the prior Board proceeding was inappropriate because under *La Vera v. Department of Labor & Industries*, 45 Wn.2d 413, 415, 275 P.2d 426 (1954), the jury instruction added "complexity and confusion" to the jury's task by "conflating which party had the burden of proof at each stage of the proceeding." Suppl. Br. of Pet'r City of Bellevue at 9; Suppl. Br. of Pet'r L&I at 20. We agree that the jury instruction added complexity to the jury's determination. But the instruction also presented the jury with an accurate statement of the law.

In *La Vera*, another workers' compensation case, we stated that the question of the burden of proof at the board level is immaterial in an appeal to superior court from a board's order. *Id.* at 414-15. But *La Vera* does not apply here. That case was decided approximately 33 years prior to RCW 51.32.185's enactment, and the jury was deciding a different issue: whether the Department correctly reclassified the claimant from total to permanent partial disability. *Id.* at 414.

24

In the context of RCW 51.32.185, the question of the burden of proof at the board level *is* material on appeal to superior court. The jury cannot know whether the City rebutted the firefighter presumption if they are not informed of its existence. We presume that jurors follow instructions, and here, there is no evidence to the contrary. *Hizey v. Carpenter*, 119 Wn.2d 251, 269-70, 830 P.2d 646 (1992). The instruction explained that the Board's decision was presumed correct. It also explained that Larson bore the burden of proving by a preponderance of the evidence that the decision was incorrect. The challenged paragraph does not ask the jury to directly *apply* the firefighter presumption. Rather, it made the jury aware of the burden of proof at the board level so that they could determine whether that burden was met. Further, as discussed previously, the special policy behind the presumption in RCW 51.32.185 indicates that the jury may be informed of the presumption's existence.

Accordingly, jury instruction 9 neither improperly informed the jury about the applicable burden of proof at the trial court level nor unduly added "complexity and confusion" to the jury's task. While the jury does not *apply* the firefighter presumption, the jury may be informed that the presumption once existed.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

E. *The Jury Instruction, When Read as a Whole, Was Not Misleading*

Finally, though it was proper to inform the jury of the burden of proof at the board level, the City argues that jury instruction 9 was nevertheless misleading because, due to its syntax, it "saddled [the] City with the double burden of disproving both elements of an occupational disease claim." City of Bellevue Pet. for Review at 17. We disagree. As the Court of Appeals noted, the instruction directly tracks the statutory definition. When read in context with the rest of the instruction, it paints an accurate picture of the applicable law.

Jury instructions are proper when, read as a whole, they permit parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998). Even if an instruction is misleading, it will not be reversed unless it prejudices a party. *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). We presume that juries follow lawful instructions. *Hizey*, 119 Wn.2d at 270. The City argues that the paragraph quoted below was misleading because it erroneously led the jury to believe that the City was required to rebut both the "arising naturally" element *and* the "proximate cause" elements in RCW 51.08.140:

> At the hearing before the Board of Industrial Insurance Appeals, the burden of proof is on the employer to rebut the presumption that 1)

claimant's malignant melanoma arose naturally out of his conditions of employment as a firefighter *and,* 2) his employment is a proximate cause of his malignant melanoma.

CP (Larson) at 1768 (emphasis added). Specifically, the City argues that the use of the conjunction "and" between the two clauses required the jury to analyze whether the City had rebutted both (not just one) of the elements.

The City has a point that a hypertechnical reading of the above paragraph could lead a reasonable mind to believe that the City had a "double burden" here. However, as the Court of Appeals notes, it is also true that the jury instruction *directly tracks* the applicable statutory definition. The IIA defines an occupational disease as one that "arises naturally and proximately out of employment." RCW 51.08.140. This jury instruction does so as well but merely breaks the definition into two parts.

Further, the instruction is not misleading when read in context with the rest of jury instruction 9. As explained in the previous section, the rest of the instruction clarifies that the findings and decision of the Board are presumed correct. CP (Larson) at 1768. It also states that the burden of proof is on the firefighter to establish by a preponderance of the evidence that the decision is incorrect. *Id.* The instruction, when read as a whole, is accurate.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

F. *RCW 51.32.185(7) Allows a Firefighter To Recover Attorney Fees Incurred at the Board Level if He or She Is Ultimately Successful on Appeal to Superior Court*

Under RCW 51.32.185(7) and RCW 51.52.130, the trial court awarded Larson $67,470.00 in attorney fees and $12,132.42 in costs. CP (Larson) at 1900-01, 1904. The City argues that fees and costs incurred litigating the board appeal, where Larson did not prevail, should not have been included in that award. Because the plain language of the statute authorizes attorney fees for "all reasonable costs of the appeal," we disagree. Whether a statute authorizes an award of attorney fees is a question of law reviewed de novo. *Torgerson v. One Lincoln Tower, LLC,* 166 Wn.2d 510, 517, 210 P.3d 318 (2009).

RCW 51.32.185(7) contains two subsections specifically addressing attorney fees in cases involving the firefighter presumption. First, RCW 51.32.185(7)(a) addresses how attorney fees should be handled at the board level. It states that "[w]hen a determination involving [the firefighter presumption] is appealed to the [Board] and the final decision allows the claim for benefits, the [Board] shall order that all reasonable costs of the appeal, including attorney fees and witness fees, be paid to the firefighter . . . by the opposing party." Next, RCW 51.32.185(7)(b) states that "[w]hen a

determination involving the presumption established in this section is appealed to *any court* and the final decision allows the claim for benefits, the court shall order that all reasonable costs of the appeal, including attorney fees and witness fees, be paid to the firefighter . . . by the opposing party." (emphasis added).

The City argues that under the plain language of the statute, only the Board, not the superior court, has the authority to award fees incurred before the Board. They assert that because Larson did not prevail before the Board, he was not entitled to recover attorney fees and costs at that proceeding. Larson argues that RCW 51.32.185(7)(b) clearly allows him to recover attorney fees for services before the Board when that decision is reversed on appeal to the superior court. He notes that he had no reason to appeal the Department's order allowing his claim, and that to exclude his costs and fees incurred at the Board would "contort[] the fee provisions of RCW 51.32.185 and the overriding policy of protecting workers as opposed to employers." Larson's Suppl. Br. at 18.

We agree with Larson: RCW 51.32.185(7) is broader than the general provision governing attorney fees in workers' compensation cases. The general provision, RCW 51.52.130, limits recovery to "services before the court only."

This court has held that this provision does not include fees for work at the Board. *See, e.g., Borenstein v. Dep't of Labor & Indus.,* 49 Wn.2d 674, 676-77, 306 P.2d 228 (1957). However, RCW 51.32.185(7)(b) does not contain such limiting language. It speaks more broadly, allowing "all reasonable costs of the appeal, including attorney fees and witness fees."

Fees incurred before the Board are reasonable "costs of appeal." This is especially true in workers' compensation cases where generally the trial is conducted on the hearing record. All witnesses are called at the board level, and the trial court may analyze only the documentation and testimony accumulated at that level. RCW 51.52.115 (stating "the court shall not receive evidence or testimony other than, or in addition to, that offered before the board"). Thus, a great deal of the "costs of appeal" are likely those that are incurred before the Board, not the trial court.

This result is also consistent with our obligation to construe the IIA liberally in favor of the worker. We award attorney fees in industrial insurance cases in order to "'guarantee the injured [worker] adequate legal representation in presenting his claim on appeal without the incurring of legal expense or the diminution of his award.'" *Harbor Plywood Corp. v. Dep't of Labor & Indus.,* 48 Wn.2d 553, 559, 295 P.2d 310 (1956) (quoting *Boeing Aircraft Co. v. Dep't of*

*Labor & Indus.*, 26 Wn.2d 51, 57, 173 P.2d 164 (1946)). To refuse to grant attorney fees here, when Larson prevailed at the Court of Appeals and before this court, would result in an inadequate recovery for Larson. We affirm the Court of Appeals and uphold the attorney fees award. We also grant Larson's request for attorney fees on appeal to this court.

## CONCLUSION

RCW 51.32.185 reflects the legislature's intent to relieve a firefighter of unique problems of proving that firefighting caused his or her disease. Accordingly, we apply the firefighter presumption with a force that gives life to the legislature's words. We hold that the question whether the City rebutted the presumption in RCW 51.52.185 is one of fact that may be submitted to the jury. In *Spivey*, the trial court erred when it decided the issue as a matter of law. We also clarify that RCW 51.32.185 shifts both the burden of production and the burden of persuasion to the employer. Thus, in *Larson*, jury instruction 9 accurately stated the applicable law. Finally, we find that Larson is entitled to attorney fees for litigating his claim before the Board and before this court. We thus affirm the Court of Appeals in *Larson*, but reverse the trial court's ruling in *Spivey* and remand for proceedings in accordance with this decision.

31

*Spivey v. City of Bellevue/Larson v. City of Bellevue*
No. 91680-2

WE CONCUR: