# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHELSI A. EASTWOOD,<br><br>          Appellant,<br><br>          v.<br><br>DONALD MICHAEL HALL,<br><br>          Respondent. | No. 86316-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Chelsi Eastwood Cooley[1] petitioned for a domestic violence protection order (DVPO) for herself and her minor child against the child's father, Donald Michael Hall. The trial court denied the DVPO because Eastwood Cooley failed to show that domestic violence occurred by a preponderance of the evidence. Eastwood Cooley appeals and argues the trial court abused its discretion by (1) relying on facts determined in the family court proceedings and failing to consider prior incidents of domestic violence, (2) finding insufficient evidence of fear of physical harm, and (3) by entering insufficient written findings. We affirm.

---

[1] Chelsi A. Eastwood's name is now Chelsi A. Eastwood Cooley. We will refer to her as Eastwood Cooley to reflect her current name.

I

Eastwood Cooley and Hall share a child, B.E.H. Hall repeatedly assaulted Eastwood Cooley while she was pregnant with B.E.H. After B.E.H. was born, Hall threatened to kill Eastwood Cooley, B.E.H., and himself. Following the dissolution of Eastwood Cooley and Hall's marriage in 2012, a final parenting plan was entered in 2014 in Skagit County Superior Court. The plan restricted Hall's visitation with B.E.H. to short professionally supervised visits.

In 2015, Hall sought more visitation with B.E.H. Hall entered Eastwood Cooley's home to demand visitation and refused to leave. That incident resulted in Eastwood Cooley obtaining a five-year restraining order against Hall. That same year B.E.H. began treatment with child therapist Dr. Joanne Solchany.

In 2018, B.E.H. and Hall began court ordered reunification counseling supervised by counselor Dr. Susan Kane-Ronning.

In 2021, B.E.H. disclosed to Eastwood Cooley and her husband that his older brother A.H., Hall's child from a previous relationship, had repeatedly pushed him to the ground resulting in bruising to his face. Eastwood Cooley unsuccessfully sought a protection order to prevent B.E.H. from being alone with his brother and to limit visits with Hall to daytime only until an investigation was completed. In the denial order, the trial court stated:

> Long standing custody dispute between the parties. Affidavits from
> several friends and family members regarding injuries appearing from
> bouncy house and interactions at a baby shower. No pictures of injuries.
> DCYF says no present danger or active safety threat. History of concerns
> re: Ms. Eastwood coaching [B.E.H.] re: concerns and allegations.

In September 2022, a visitation supervisor Michelle Thayer, conveyed B.E.H. to a visit with Hall and reported B.E.H. as being extremely upset, angry, anxious, agitated, and reluctant to go. Once at the exchange location, B.E.H. remained buckled in his seat and refused to get out of the car. Hall grabbed B.E.H. and tried to forcibly remove him from the car. Hall's wife told B.E.H. that police would be called and would make him go if he refused to get out. After B.E.H. exited the vehicle, Thayer witnessed Hall holding B.E.H. forcefully and trying to get him into a vehicle. Other people who witnessed the incident reported to police that a child was screaming "no no no don't take me." Thayer called 911 to report concern for B.E.H.'s safety and later reported the incident to the Department of Children, Youth, and Families (DCYF).

In April 2023, after a hearing in the ongoing family law proceeding, the Skagit County Superior Court ordered that B.E.H. reside with Hall three days every week and ordered the continuation of reunification counseling with Dr. Kane-Ronning. The trial court found that [B.E.H.] "has been put in an awful position," and that "an immediate transfer of the child to father's custody would add stress to the child." The court reserved for trial the issues of limiting factors on either parent.

On December 7, 2023, Eastwood Cooley petitioned the Whatcom County Superior Court for a one-year DVPO against Hall for herself and B.E.H. who was 12 years old at the time. Eastwood Cooley sought immediate protection and provided the following explanation:

> [B.E.H.] has expressed suicidal ideation and plans (three separate plans) after Mr. Hall physically assaulted him. [B.E.H.] requires protection because he believes suicide is his only path away from Mr. Hall's physical, mental, and psychological abuse. Mr. Hall's repeated physical assaults against [B.E.H.] have caused physical and emotional distress upon

-3-

[B.E.H.] but also instilled fear and apprehension in our family, emphasizing the critical need for legal protection to prevent future encounters with Mr. Hall.

The petition explained the most recent incident as occurring on November 28, 2023:

[B.E.H.] revealed a troubling episode during what was supposed to be a therapeutic setting, wherein [Hall] used physical force, using his hands to forcefully shove [B.E.H.] in the shoulder/arm area, knocking him off his chair onto the ground. As a result, [B.E.H.]'s hands and lower body came into contact with the carpeted floor, exacerbating the emotional distress and trauma. Bryan contacted Bellingham Police Department and made a report to Officer Salgado case #23-870907. Subsequently, on the following day, [B.E.H.]'s emotional turmoil escalated to a critical level, prompting suicidal ideation and then three separate realistic plans to end his life in order to escape Mr. Hall. In response, immediate crisis intervention was deemed necessary to address [B.E.H.]'s mental health. The Whatcom Mobile Crisis Outpatient Team (MCOT) has been actively engaged with [B.E.H.] daily since November 29th, referring him to their WISE program for intensive wrap-around services aimed at mitigating the psychological repercussions of the traumatic incident.

The petition then described a second recent incident as occurring on December 1, 2023:

[A] verbal agreement was reached for [B.E.H.] to remain in the care of his mother, and for Mr. Hall to receive make-up time later. This agreement was based on providing [B.E.H.] with safety and the logistical consideration that Mr. Hall lives outside of Whatcom County, thus excluding [B.E.H.] from the MCOT services he requires. However despite the agreement, Mr. Hall unexpectedly arrived at [B.E.H.]'s ninja class with the intention of taking him for a visit. This unexpected and unwarranted appearance at the ninja class disrupted the established agreement, causing [B.E.H.] additional emotional distress.

Mr. Hall's attempts to engage with [B.E.H.] at the gym resulted in further emotional trauma and distress for the child. [B.E.H.] did not wish to interact with Mr. Hall or leave the facility with him. [B.E.H.] was terrified and held his mother's hand. The incident at the ninja gym intensified when Mr. Hall's behavior escalated into a distressing scene, exacerbating the trauma for [B.E.H.] and his family. Mr. Hall's disruptive actions included attempts to initiate an altercation with Bryan when Bryan assisted

-4-

in gathering [B.E.H.]'s jacket and belongings. Yelling commenced within the gym premises as Mr. Hall followed the family, continuing to shout while they walked towards their car. Mr. Hall was yelling phrases, "What the hell is going on here! [B.E.H.] what the hell is going on here! It's my weekend! What the hell!"

Upon reaching our vehicle, Mr. Hall obstructed our departure from the parking lot, forcibly detaining us by blocking the car with his body. His continued yelling and erratic arm movements heightened the anxiety and fear for [B.E.H.] and our family, creating a threatening and distressing environment.

The petition also described prior incidents to include the events that occurred in September 2022 when B.E.H. was forced from a vehicle for a visit with Hall. Further past incidents were described as follows:

Mr. Hall physically assaulted [B.E.H.] on Feb, 22, 2023 when [B.E.H.] attempted to escape verbal and emotional abuse during what was supposed to be a therapeutic setting by running away. Mr. Hall chased [B.E.H.] down and threw him against a brick wall. Mr. Hall held [B.E.H.] against the wall and screamed in his face scaring [B.E.H.] and hurting his back. [B.E.H.] reported being terrified. . . .

On June 21, 2015, Mr. Hall illegally entered our home and demanded a visitation. At the time there was no mechanism for Mr. Hall to seek visitation, he had been disengaged from parenting for approximately three years. In conjunction with Mr. Hall illegally entering our home and refusing to leave he continued to stalk, intimidate and harass our family until a 5-year restraining order was entered in August 2015. On June 24, 2022, Mr. Hall appeared at our home on his motorcycle, he did a "burn-out" in our gravel driveway, revved his engine and peeled out. I contacted the Whatcom Sheriff and Deputy Brown trespassed Mr. Hall, case #22-A17144. I was fearful and am fearful of Mr. Hall's escalating behavior and lack of boundaries.

On February 10, 2017, Mr. Hall threatened me in a statement to [B.E.H.]'s child therapist, Dr. Solchany. Mr. Hall stated, "I will do what I need to do to destroy Chelsi." I am fearful Mr. Hall will not stop. I am worried [B.E.H.] or I will end up dead.

In a responding declaration, Hall denied any physical abuse of B.E.H. during the November 28 video session with Dr. Kane-Ronning and asserted that he and B.E.H.

were within her sight.  Hall asserted the claims were continuing parental alienation by Eastwood Cooley and a product of coaching by Eastwood Cooley.  Hall also asserted that there was no agreement to forfeit a visit on December 1, 2023, and denied any yelling or physical blocking of the car.  Hall also denied that any of the prior incidents occurred as described by Eastwood Cooley and that those incidents "have already been addressed" by the family law proceedings.

At the hearing on December 20, 2023, the superior court commissioner heard testimony from Dr. Solchany and Dr. Kane-Ronning.  Dr. Solchany provided the following testimony about physical assaults reported by B.E.H.:

> He told me that Mr. Hall pushed him up against a building . . . where therapy is held, his reunification therapy, because he was trying to—he walked out of the session and was trying to leave the building.
>
> He said that—they—they reported that—he told me that Susan told him that was just parenting and that he was told it was because he was going to run out into cars, and he said no, he wasn't.
>
> He reported an incident recently where he was in a therapy session and he said—he said something rude to [Hall], and then [Hall] shoved him off the chair, and he demonstrated for me how he had to brace himself from falling on the floor.
>       . . . .
> I think—what [B.E.H.] has told me is that [Hall] has become more and more angry over time.  He's told me that he doesn't have any choices; that, you know, he—you know, he doesn't trust him.  He's afraid of him. He gets yelled at and told that he's wrong and called a liar consistently.

Dr. Kane-Ronning testified that Hall did not assault B.E.H. during the November therapy session or in any other therapy sessions.  As to the incident where B.E.H. said he was pushed against a building, Dr. Kane-Ronning testified as to her observation:

> [B.E.H.] started to run to turn the corner towards traffic, and I directed Mr. Hall that he needed to get him.  [B.E.H.] was head-butting his dad, kicking his dad.  Mr. Hall had to hold him, not harmfully, but firmly enough to get

him back. And he did not slam him against a brick wall. I was within three feet of him. I would never tolerate that.

The commissioner concluded that the extensive history of the case was instructive but not controlling. The commissioner considered the declarations and testimony provided by both parties and determined there was insufficient evidence to support a finding that domestic violence occurred. The commissioner denied the DVPO on the merits and dismissed the petition. The commissioner made a general finding of "no dispute that [B.E.H.] is in distress."

On January 2, 2024, Eastwood Cooley moved for revision.

At the revision hearing on January 19, 2024, the trial court heard argument from Hall and Eastwood Cooley. The trial court reviewed the entire case file and referred to the family law proceedings noting it was not appropriate to consider any factual determinations made by the family law court:

> I've reviewed the entire file in this case and the transcripts that were provided of the hearing in front of Commissioner Ivarinen, and any—any discussion of considering any factual issues that may have been determined previously in Skagit court, I agree, that's not appropriate. . . . Certainly those issues can be brought up with this court, but I do think that the prior hearings in Skagit County are relevant to this case, to provide some context of what's been happening between the parties over the course of many years.

The trial court focused on the November 28 incident:

> And we have testimony from both sides. Mr. Hall denies that these incidents occurred, and he's also provided testimony of a professional, including Dr. Kane-Ronning, that emphatically testified that the most recent incident—well, the incident in November did not occur. She was observing that meeting, and it didn't—and the push that is alleged by [B.E.H.] didn't happen during that meeting.

> So we have testimony on both sides whether this assault happened or not, and the question is whether the court can find more likely than not that it did happen.

The court then concluded that Eastwood Cooley failed to meet the burden of proof:

> And I consider the history of the case and the testimony of the experts in the case who have been involved with this family and the history and allegations of parental alienation by Ms. Eastwood in this case. And based on all of that, I can't find by a preponderance of the evidence that any domestic violence occurred with [B.E.H.] as a victim.

The trial court entered an amended denial order stating insufficient evidence and that, "due to conflicting credible evidence, court cannot find by a preponderance of evidence that domestic violence occurred to either Petitioner or minor child."

Eastwood Cooley appeals.

II

A

This court reviews the denial of a DVPO for an abuse of discretion. Rodriguez v. Zavala, 188 Wn.2d 586, 590-91, 398 P.3d 1071 (2017). "An abuse of discretion is found when a judge's decision is exercised on untenable grounds or for untenable reasons." Zavala, 188 Wn.2d at 598. We view the evidence and all reasonable inferences in the light most favorable to the party who prevailed below. Garza v. Perry, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023).

This court reviews the trial court's findings for substantial evidence, deferring to the trier of fact on questions of witness credibility, conflicting testimony, and persuasiveness of the evidence. In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). "Evidence is substantial if it is sufficient to

persuade a fair-minded, rational person of the declared premise." Merriman v. Cokely, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). The written findings may be supplemented by the oral decision of the trial court or statements in the record. In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986).

When reviewing an order on revision, this court reviews the trial court's decision, not the decision of the commissioner. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

Chapter 7.105 RCW governs the issuance of civil protection orders. Under RCW 7.105.225(1), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." By a preponderance of the evidence means that the proposition is more probably true than not. Spivey v. City of Bellevue, 187 Wn.2d 716, 728, 389 P.3d 504 (2017); WPIC 21.01. The petitioner must show that "the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). The trial court may not deny a petition on the grounds that the "relief sought by the petitioner may be available in a different action or proceeding," or that the "conduct at issue did not occur recently." RCW 7.105.225(2)(d), (e). The definition of "domestic violence" includes "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault . . . of one family or household member by another family or household member." RCW 7.105.010(9)(b). And a "petitioner may petition for relief . . . on behalf of family or household members who are minors." RCW 7.105.100(1)(a).

B

Eastwood Cooley first argues the trial court abused its discretion by: (1) referring to and considering the family law court proceedings and concluding that prior incidents of domestic violence were resolved by those proceedings in violation of RCW 7.105.225(2)(d); (2) refusing to consider prior incidents of domestic violence because of the passage of time in violation of RCW 7.105.225(2)(e); and (3) improperly considering claims of "parental alienation" in the family court proceeding as evidence.

But the trial court did not deny the petition for those reasons. Instead, the trial court determined that Eastwood Cooley failed to meet the burden of proof. Nothing in the record shows the trial court refused to consider the evidence provided by Eastwood Cooley or deferred to the family law proceedings. On the contrary, the trial court explicitly stated that it considered the entire case file which included the history of domestic violence and the declarations by Eastwood Cooley and B.E.H. And while the trial court addressed the family law proceedings in Skagit County, it did not deny the DVPO based on those proceedings. We defer to the trial court's determinations regarding credibility and persuasiveness of evidence. Knight, 178 Wn. App. at 936-37.

Eastwood Cooley next argues the trial court abused its discretion by finding insufficient evidence of fear of physical harm. Eastwood Cooley asserts the trial court disregarded statements made by herself and B.E.H. which, together with corroborating evidence, clearly establish domestic violence.

But again, nothing in the record shows the trial court disregarded the declarations or any other evidence provided by Eastwood Cooley. The trial court expressly stated

-10-

that it considered the argument by the parties, which included fear of physical harm. Eastwood fails to show that the trial court did not consider fear of physical harm.

Eastwood Cooley finally argues the trial court's written findings are insufficient under RCW 7.105.225(5), which requires the court to "state in writing the particular reasons for the court's denial." Eastwood Cooley relies on <u>Maldonado v. Maldonado</u>, 197 Wn. App. 779, 391 P.3d 546 (2017), but that case is distinguishable. In that case, there was substantial evidence that domestic violence occurred to three children but the trial court issued a DVPO for only one child. Because the written findings did not explain why protection was denied for the other two children, this court deemed the order insufficient for review and on remand directed the trial court to consider protection as to the two children and, if denied, to enter particular reasons for its denial. <u>Maldonado</u>, 197 Wn. App. at 790-92. Here, the trial court gave a particular reason for the denial—the failure to show domestic violence occurred by a preponderance of the evidence.

The trial court did not abuse its discretion by denying the DVPO petition.

We affirm.[2]

Mann, J.

WE CONCUR:

Birk, J.

Cheung, J.

---

[2] Eastwood Cooley requests attorney fees on appeal under RAP 18.1(a) and RCW 7.105.310(1)(j). Because Eastwood Cooley did not prevail she is not entitled to attorney fees and costs on appeal. Hall also requests attorney fees on appeal but fails to provide an applicable basis in law supporting his request. RAP 18.1(a).