# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>OSCAR CHURAPE-MARTINEZ,<br><br>Appellant. | DIVISION ONE<br><br>No. 79565-1-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Following his convictions for residential burglary, unlawful imprisonment, attempting to elude a pursuing police vehicle, and malicious mischief in the third degree, Oscar Churape-Martinez appeals. On appeal, he asserts that insufficient evidence supported his residential burglary and malicious mischief convictions, that the wording of a jury instruction allowed him to be convicted of acts of malicious mischief with which he was not charged, and that prosecutorial misconduct denied him a fair trial. Finding no error, we affirm.

I

Jacob Morrison lived in a trailer in Friday Harbor with his girlfriend, Mikkiah Bradley, and Bradley's sister, M.J.B.[1] In September 2018, M.J.B. was 16 years old and dating 22-year-old Oscar Churape-Martinez. Morrison and Mikkiah were disinclined to support M.J.B. in this relationship because M.J.B. and Churape-

---

[1] Because Mikkiah Bradley and M.J.B.'s mother, Rashelle Bradley, share a surname, they are referred to herein by their first names to avoid confusion. No disrespect is intended.

Martinez argued frequently. Eventually, Morrison and Mikkiah told Churape-Martinez that he was not welcome at their house.

On September 26, 2018, at around 3:00 or 4:00 p.m., M.J.B. went to sleep at Morrison's house. Mikkiah was home at this time but left with Morrison while M.J.B. was still asleep. Mikkiah left a few cigarettes for M.J.B. with a note explaining that she and Morrison were out of the house but would return soon. Mikkiah and Morrison ensured that the front door of Morrison's home was locked before departing.

Upon leaving Morrison's home, Mikkiah saw Churape-Martinez across the street, helping a neighbor address an issue with the neighbor's vehicle. Mikkiah considered Churape-Martinez's presence in the area to be unusual.

After a few hours had passed, Mikkiah and Morrison returned home to find that "everything was messed up." The door knob and lock on the front door of the home had both been broken, and a chair and a pot on the front porch had been overturned. Although Mikkiah's note and the cigarettes were in the same place she had left them, M.J.B. was gone. The room in which M.J.B. had been sleeping was "trashed," with both a mirror and a fan that had been within broken. Mikkiah asked Morrison to telephone 911 because M.J.B. was missing. Morrison did so.

Churape-Martinez, meanwhile, had independently attracted the attention of local law enforcement when he was seen driving along area roads at speeds far above the posted speed limits. Two police vehicles followed Churape-

Martinez with their sirens activated, attempting to induce him to pull over, without success. Ultimately, Churape-Martinez drove into a residential driveway.

Once the vehicle had stopped, M.J.B. telephoned her mother, Rashelle Bradley, and asked to be picked up. She stated that she had been sleeping at Morrison's house when she was roused by Churape-Martinez breaking down the front door, that she had departed with Churape-Martinez in his vehicle after he claimed to have a firearm, and that the police were pursuing his vehicle. While she was talking to M.J.B., Rashelle had her husband telephone 911 and provide the address where M.J.B. was located. However, Churape-Martinez then drove to a different house, where police first located his parked vehicle, and then located Churape-Martinez and M.J.B. Churape-Martinez was arrested.

When San Juan County Sheriff's Detective Lachlan Buchanan arrived at the scene, she saw M.J.B. and her father standing in the house's driveway while Churape-Martinez was seated in the back seat of a police vehicle. Both M.J.B. and Churape-Martinez were questioned at the police station. Churape-Martinez initially denied that he had been driving his vehicle and claimed that it had been stolen. Later, he stated that he was working on a vehicle at a friend's house when he went to Morrison's house because "he was pissed off 'cause they used dope there."

Churape-Martinez was charged with four offenses: (1) residential burglary aggravated by domestic violence, (2) unlawful imprisonment, also aggravated by domestic violence, (3) attempting to elude a pursuing police vehicle, (4) and malicious mischief in the third degree.

Although Churape-Martinez did not testify at trial, M.J.B., still a minor, did so because of her belief that it would be "good for [Churape-Martinez]." According to M.J.B., she went to Morrison's house because she felt ill and needed rest after having an argument with Churape-Martinez the night before. She explained that Churape-Martinez kept her "on a really short leash." M.J.B. claimed that Churape-Martinez broke down Morrison's door out of concern for her because no one had answered his knocks and "he was freaked out." Because Churape-Martinez was angry with her, M.J.B. refused to leave and, while the two were arguing, he broke the mirror. Although she left the home barefoot, she denied that Churape-Martinez had shoved or otherwise forced her into his car, claiming that he only opened the door for her to enter the vehicle.

Once she had done so, M.J.B. testified, an argument ensued because Churape-Martinez was both intoxicated and was failing to heed posted speed limits. M.J.B. asked him to leave her with her mother and, when he refused, she telephoned her mother herself. Her statements to her mother, although inconsistent with M.J.B.'s own later testimony, were admitted as evidence under the excited utterance exception to the hearsay rule. As her mother testified:

> She said, Mom, I was sleeping at Oscar's and—I mean, at Jacob's, I'm sorry, and Oscar woke—I woke up to hearing banging and the—and then she said, I'm just really scared. He made me get into the car, and he was—and there was cops. And—and he said that he was taking me with him. And I said, let me out, and he would not let me out. And now we're here.[2]

---

[2] M.J.B. also told her mother that Churape-Martinez claimed to have a gun, although M.J.B. had not seen it.

The jury convicted Churape-Martinez on all four counts. The court sentenced him to a total of 17 months of confinement. He appeals.

II

First, Churape-Martinez claims that insufficient evidence supported his conviction for residential burglary. This is so, he asserts, because the State did not prove his intent to commit a crime in Morrison's residence. However, when the totality of the evidence adduced at trial is viewed in the light most favorable to the State, it is apparent that Churape-Martinez's averment is devoid of merit.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV, § 1; WASH. CONST. art. 1, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the

evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The elements of residential burglary are set forth in RCW 9A.52.025, which provides:

> (1) A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle.

Thus, to establish that Churape-Martinez was guilty of the offense, the State was required to prove (1) that he entered or remained unlawfully in a dwelling other than a vehicle and (2) that he intended to commit a crime against a person or property therein. State v. Stinton, 121 Wn. App. 569, 573, 89 P.3d 717 (2004). A person enters or remains unlawfully in a dwelling if he does so without license, invitation, or privilege. RCW 9A.52.010(2). Permission to enter or remain in the dwelling may only be given by a person who resides in or otherwise has authority over the property. State v. Grimes, 92 Wn. App. 973, 978, 966 P.2d 394 (1998).

To argue that he did not intend to commit a crime against a person or property within the dwelling, Churape-Martinez relies on M.J.B.'s testimony. M.J.B. indicated that Churape-Martinez broke into Morrison's home because he was "freaked out" and "he just wanted to protect me, honestly." He also highlights M.J.B.'s failure to recall how or when Morrison's mirror was broken. In making this argument, Churape-Martinez misapprehends the standard of review to which we adhere: when an appellant challenges the sufficiency of the evidence supporting his conviction, all evidence, and all reasonable inferences

6

therefrom, must be construed in the light most favorable to the State. Salinas, 119 Wn.2d at 201.

A juror could find that the evidence herein showed that Churape-Martinez did not have permission to enter the home and that he was angry. He chose to wait outside the home under the pretense of helping Morrison's neighbor until Morrison and Mikkiah had left. Upon their departure, he broke down the home's front door, broke several objects inside, argued with M.J.B. and told her that he was armed, and forced her to leave the home in his vehicle without allowing her to put on shoes. M.J.B. admitted to feeling "threatened" and told her mother that she was scared. She also admitted that Churape-Martinez broke Morrison's mirror. This was consistent with Detective Buchanan's testimony, in which he indicated that Churape-Martinez admitted to breaking the mirror because he was angry.

A rational trier of fact could conclude from this evidence that Churape-Martinez unlawfully entered Morrison's home with the intent to commit a crime therein. Churape-Martinez was angry when he broke down the front door and proceeded to damage personal property. In doing so, he also accosted a sleeping M.J.B., told her that he had a gun, and coerced her into leaving the house barefoot and departing in his vehicle. Thus, viewed in the light most favorable to the State, the evidence is clearly sufficient to support the verdict finding Churape-Martinez guilty of residential burglary.

7

III

Churape-Martinez also attacks the sufficiency of the evidence supporting his conviction for malicious mischief in the third degree. Specifically, he claims that the evidence adduced at trial does not support a finding that he acted with malice when he destroyed Morrison's personal property. As overwhelming evidence supports such a finding, his claim is meritless.

Again, in challenging the sufficiency of the evidence, Churape-Martinez admits the truth of both the evidence against him and all reasonable inferences supported by that evidence. Salinas, 119 Wn.2d at 201. We construe both the evidence and the inferences in the light most favorable to the State and will reverse only if no reasonable juror, when presented with this evidence, could find Churape-Martinez guilty of the charged offense. Jackson, 443 U.S. at 319.

The applicable definition of malicious mischief in the third degree is provided in RCW 9A.48.090.

> (1) A person is guilty of malicious mischief in the third degree if he or she:
> (a) Knowingly and maliciously causes physical damage to the property of another, under circumstances not amounting to malicious mischief in the first or second degree.

As to the definition of "malice,"

> "Malice" and "maliciously" shall import an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty.

RCW 9A.04.110(12).

8

As the evidence makes clear, Churape-Martinez destroyed property inside Morrison's home without just cause or excuse. Churape-Martinez himself stated that he was angry when he broke Morrison's mirror. It may be easily inferred from the evidence that these actions were intended to vex, injure, or annoy M.J.B., Morrison, Mikkiah, or all three.

Thus, his challenge fails.

IV

Churape-Martinez next alleges a violation of his Sixth Amendment right to be convicted only of a crime with which he was charged. This is so, he asserts, because the information charging him with the crime of malicious mischief in the third degree identified property which Churape-Martinez was alleged to have damaged, but the jury's "to-convict" instruction did not mention the property that was damaged with any particularity. Churape-Martinez's argument relies on conflation of the respective purposes, and requirements, applicable to the information and to the jury instructions.

"Jury instructions and charging documents serve different functions." State v. Vangerpen, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995). The purpose of a charging document is to provide notice to the defendant of the charge against him and its factual basis. State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987). It is not to inform the jury of the same—for the jury, the case is contained in an elements instruction and the accompanying definitional instructions. State v. Smith, 131 Wn.2d 258, 262-63, 930 P.2d 917 (1997). "Jury instructions 'allow[ ] each party to argue its theory of the case' and 'must convey to the jury

9

that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt.'" State v. Porter, 186 Wn.2d 85, 93, 375 P.3d 664 (2016) (alteration in original) (quoting State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007)).

"In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (citing State v. Lee, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995)). However, the inclusion of an otherwise unnecessary element of the offense in an information does not mandate that element's inclusion in the jury's instructions. "[N]ot every omission of information from a 'to convict' jury instruction relieves the State of its burden of proof; only the total omission of essential elements can do so." State v. Sibert, 168 Wn.2d 306, 312, 230 P.3d 142 (2010).

In fact, our courts have repeatedly held that references to specific pieces of evidence in to-convict jury instructions may be constitutionally prohibited comments on the evidence. See, e.g., State v. Levy, 156 Wn.2d 709, 716, 720-21, 132 P.3d 1076 (2006) (instruction providing State had to prove defendant entered or remained unlawfully in a "building, to-wit: the building of Kenya White," when whether alleged victim Kenya White lived in building was a question for the jury, necessitated reversal of conviction); State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997) (special verdict form asking jury whether defendants were within 1,000 feet of school, "to-wit: Youth Employment Education Program

School," was unconstitutional because whether program office was actually a school was fact question for the jury). The Washington Constitution prohibits a judge from expressing to the jury his or her opinion about the merits or facts of a case. CONST. art. IV, § 16. "[A]n instruction that states the law correctly and is pertinent to the issues raised in the case does not constitute a comment on the evidence." State v. Winings, 126 Wn. App. 75, 90, 107 P.3d 141 (2005) (citing State v. Johnson, 29 Wn. App. 807, 811, 631 P.2d 413 (1981)).

The information charging Churape-Martinez with malicious mischief in the third degree stated:

> That the defendant OSCAR CHURAPE MARTINEZ in the County of San Juan, State of Washington, on or about September 26, 2018, did commit the crime of Malicious Mischief in the Third Degree: did knowingly and maliciously cause physical damage in an amount not exceeding $750.00 to the property of another, to-wit: door and/or frame and/or mirror, belonging to Jacob Morrison contrary to RCW 9A.48.090(1)(a), and against the peace and dignity of the State of Washington.

The to-convict instruction for malicious mischief herein provided, in relevant part:

> To convict the defendant of the crime of malicious mischief in the third degree, each of the following two elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about September 26, 2018, the defendant knowingly and maliciously caused physical damage to the property of another, and
> (2) That this act occurred in the State of Washington County of San Juan.

These elements reflect those set forth in RCW 9A.48.090. The evidence adduced at trial showed only one continuing course of conduct in which Churape-Martinez broke into Morrison's home and damaged property inside. There was

11

no evidence adduced of Churape-Martinez damaging property at any other location on this date.

This case is not analogous to State v. Jain, 151 Wn. App. 117, 210 P.3d 1061 (2009) or State v. Brown, 45 Wn. App. 571, 726 P.2d 60 (1986), as Churape-Martinez would have us believe. In Jain, the defendant had been charged with two counts of money laundering based on the transfer of two parcels of real property, but the evidence at trial adduced that he had actually transferred seven different properties on the same day. 151 Wn. App. at 120-23. Although only two money laundering offenses were charged, the existence of seven possible offenses meant that a unanimity instruction or an election of the specific transfers giving rise to the charges was necessary. Jain, 151 Wn. App. at 124. In Brown, the defendant was charged by information of conspiring with 11 specifically named people to commit theft, but the to-convict instruction required the jury only to find the defendant agreed with "one or more persons" to engage in the conduct. 45 Wn. App. at 576. As several witnesses not named in the information nonetheless testified to their involvement in the conspiracy, we held that the instruction improperly allowed the jury to convict the defendant of conspiring with an uncharged witness. Brown, 45 Wn. App. at 576.

However, here, there is no evidence indicating that Churape-Martinez committed multiple incidents of malicious mischief on September 26, 2018, and thus nothing that would give rise to the possibility of a conviction for an uncharged offense. That evidence tended to prove that he broke several items of Morrison's personal property when he was in the home does not mean a new

or separate course of conduct ensued such that he could be convicted of an incident of malicious mischief for which he was not charged. The ambiguities fostered by the improvidently worded jury instructions in Brown and Jain are not present here. There was no error.

V

Finally, Churape-Martinez avers that prosecutorial misconduct during the State's closing argument denied him a fair trial. His claim of misconduct is premised on the prosecutor's statements regarding the elements of burglary—statements that, as the State concedes on appeal, were incorrect. Because Churape-Martinez cannot show prejudice resulting from this misstatement, his claim fails.

A defendant alleging prosecutorial misconduct bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Once a defendant establishes that a prosecutor's statements were improper, the appellate court determines whether the defendant is entitled to relief by applying one of two standards of review. Emery, 174 Wn.2d at 760. The first standard, which applies if the defendant timely objected at trial and the objection was overruled, requires that the defendant show that the prosecutor's misconduct led to prejudice that had a substantial likelihood of affecting the jury's verdict. Emery, 174 Wn.2d at 760.

The second standard applies if the defendant did not object at trial. In that event, the defendant is deemed to have waived the claim of error unless the defendant can show that "(1) 'no curative instruction would have obviated any

prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Here, given that Churape-Martinez did not object to the prosecutor's comment at trial, the latter standard applies. The prosecutor's statement as to the elements of residential burglary was as follows:

> Now, as far as residential burglary goes, intent is defined for you. . . . [T]hey don't have to intend to commit a crime. They have to intend to commit an act that happens to be a crime. So when he entered that home unlawfully, when he crossed that threshold, when he committed trespass going in there, he committed residential burglary.
>
> It doesn't matter that he committed more crimes later that he may not have preconceived as he crossed the threshold. It's not complicated. He broke the door down; that's a crime. And then he committed a variety of crimes when he's . . . inside.
>
> So all he's got to intend is crossing that threshold. Breaking that door, he's got to intend that. . . .
>
> . . . .
>
> . . . Residential burglary was committed the moment he walked up on that door and crossed that threshold.

Churape-Martinez fails to show that the prosecutor's comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. In fact, he does not demonstrate any likelihood of prejudice stemming from these remarks. As is discussed above, abundant evidence supported Churape-Martinez's conviction for residential burglary. Further, the jury was instructed that

> [t]he lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You

must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

The court also instructed the jury as to the statutory elements of residential burglary. "We presume that juries follow lawful instructions." Spivey v. City of Bellevue, 187 Wn.2d 716, 738, 389 P.3d 504 (2017). Churape-Martinez points to nothing that would rebut this presumption.

In light of the abundant evidence supporting the jury's guilty verdict, and in light of the jury's proper instruction on the elements of residential burglary, Churape-Martinez does not show any prejudice resulting from the asserted instance of prosecutorial misconduct. Thus, his claim fails.

Affirmed.

_____

WE CONCUR:

_____     _____